I want to welcome you all here this morning, and note a point of personal privilege to begin with. Members of my Inn of Court, the Garland Walker Inn of Court from Houston, Texas, came over to watch oral argument today. And some of them were wounded in action because their plane was canceled and they didn't make it over. But those who made it over are in the audience, including Mr. Dick Schwartz, who founded the Inn. And coincidentally arguing in front of us, Mr. Anand is an active member of our Inn. So we welcome you all, Inn members, this morning. You better do a good job. But we'll just point out a couple of rules of the road. We have traffic light system. We can also see the numbers wind down in front of the podium, the timer. So we know exactly how much time you have left. And when the yellow light comes on, you have two minutes. When the red light comes on, we ask you to conclude your argument unless you're answering a question from the court. We have read your briefs and record excerpts. We have not necessarily read the whole record, so we appreciate your record citations. And with that, we'll call the first case of the morning, number 1440387, Blythe v. Bumbo International Trust. Mr. Sanfilippi.  Good morning, Your Honors. Steve Sanfilippi for Appellants Erica and Cody Blythe. The issue in this case is whether this product, the Bumbo baby seat, contains marketing or design defects. The district court found as a matter of law that it does not contain marketing defects and granted summary judgment. The case went to trial on the design defect case, and the jury concluded that it did not contain a design defect. On appeal, the Blythe's raised three issues. The first is that the district court erred with respect to concluding as a matter of law that the warnings were adequate. The second is that the district court erred in excluding evidence related to a 2012 recall of the product to make sure that a seat belt was installed on it. And the third is that the evidence established as a matter of law at trial that the seat contained a design defect. I'm going to focus primarily on the warnings claim this morning. This Bumbo seat comes from the record show vis-a-vis exactly what happened when the mother placed the child on the table while she was cooking dinner and keeping an eye on him. And she says something about the child suddenly pushed back and fell off the table. What are the facts as to exactly what she said happened? And such as did the child come out of the seat or did the child go with the seat and hit the floor? I believe that the fact No, don't tell me what you believe. I expect you to know the record. Now, what does the record say? The record says that the child flipped over as she was sitting right next to the child cutting vegetables on the table and fell over. And the seat was I believe the child was still sort of in the seat, sort of out of the seat. I think the seat fell off the table along with the child. So the child pushed back in the seat and fell off the table? It fell out of the seat and off the table. And is there anything in the record that would any record evidence that would say that had there been a seat belt on that bumbo that this would have prevented the child from pushing back with his or her feet at age eight months and falling off the table? I believe the experts testify that if the seat belt had been on the child, she wouldn't have been able to come out of the seat. So the child would have fallen off the table in the bumbo and I don't understand. You're saying not hit her head? I'm not necessarily sure that the evidence was that the seat would have fallen off. I think she fell out of the seat and the seat came down on top of her. She didn't fall in the seat. The seat didn't cause the fracture, did it? Hitting her head on the floor caused it. Hitting her head on the floor did after she fell out of the seat. So the seat, this foam rubber seat didn't cause the fracture. All right. Thank you. All right. Yes, Your Honor. Prior to 2007, this seat came with three types of warnings. There were on-the-box warnings and there was a leaflet in the box and there was one warning on the back of the seat. In a case in 2013, it's styled O'Neill v. Bumbo. This district court concluded that there was a genuine issue of material fact as to whether those three warnings were adequate based upon the size of the font, the location of the font, the fact that the material used to put the warning on the seat. There was a genuine issue of material fact as to whether any of that was adequate. But that was a pre-2007. That was a pre-2007 seat. 2007, the seat's recalled due to numerous incidents of children coming out of the seat. In response to the recall, Bumbo adds another warning. It's a warning on the front corner. I lift the seat because of the microphone, but it puts a triangle on the front corner on one of the sides of the seat. The district court summary judgment order found that to be dispositive and to take the warnings from being inadequate on the 2007 seats to now being adequate post-2007 due to the admission of that warning. And then the court concluded that even if the warnings remained inadequate, which it found they weren't, that as a matter of law, the Blyce could not prove causation because they didn't read the warnings that were actually on the seat. Admittedly so. Admittedly so. When she received the gift at the baby shower, she threw away the warnings in the box and then didn't read the warnings on the item itself. That's correct. As Bumbo is aware, happens all the time with these things, and which is one of the reasons why the district court found in O'Neill that the warnings on the box and the warning on the leaflet weren't sufficient. At least there was a genuine issue. What is your record evidence to say Bumbo found out people don't read the instructions, the warnings? It is testimony from Bumbo's witness acknowledging it. It is in the record, Your Honor. I don't have the exact site. A Bumbo witness testified that Bumbo was aware prior to this accident that consumers do not read the warnings on the seat. Absolutely. They testified. What about the warnings in the box that were discarded at the baby shower? Same. Same deal. They're aware that the most important warnings on this are the warnings on the seat because consumers don't read the box and the leaflet get thrown away, and all they have is the warning that's on the seat. How long have these plaintiffs been using the seat? They received the seat in November of 2009. She fell out in September 2010. Well, I understand that, but obviously the baby, I don't know exactly when the baby was born, probably in January or February, and you can't even put them in that for several months. Right. Not very long. But they must have been, well, I mean, there was evidence at trial, wasn't there? There was evidence that she had used it a couple times. I don't remember, Your Honor, exactly how often she had used it. Honestly, Your Honors, I don't know the answer. Those of us who have grandchildren are familiar with seats like this, and not speaking outside the record, you can't put the child in them until the child can hold its head erect, and then you stop using them when they start arching their back a whole lot because they're getting ready to crawl and wiggle around. So I would say sometime between four and five months probably is when you can start using them. They're marketed for six months and up. Well, there you go. I'm almost right. This baby was eight months. This baby was about eight months when she fell out. That's correct. So the warnings that were added, although the judge concluded that as a matter of law that additional warning took this to be adequate, made this from being a genuine issue of material fact as to whether there was a marketing defect to now all of a sudden marketing defect as a matter of law, if the proper summary judgment standard had been applied, I don't think he could have reached that conclusion. The Blythe Submitted Summary Judgment Act, first of all, they submitted an expert report. The district court, he didn't strike the report. He didn't strike the factual issues in the report, but he did say that it was not a proper topic of expert testimony because it didn't require specialized knowledge. But if you set aside the expert report and the evidence in the expert report, the Blythe still submitted evidence of the font size that it was difficult to see the font size. That's on pictures that they submitted. Here's the seat. You can see it. That's also they've submitted evidence that the warnings that are put on the seat is subject to degrading. You look at a seat, you can't read the warnings anymore. The warnings have faded out. They have come out. Well, surely not after two months of use. There's no evidence in the record as to how quickly they degrade. Are you arguing, too, that are the warnings adequate? Or are you saying that we're hard to see? Yes, that the warnings are inadequate, that there's a genuine issue of material fact as to whether they're adequate. So it's not a matter, is it a matter of they faded away, you could not see them, or if they were clearly there, they were adequate warnings? It's not a content issue. We're arguing more that the material used to put on, they don't draw the attention. They don't draw the consumer's attention based upon the contrast of the color used on the seat, the size of the font, the location of the seat. It's not one, even the added warning. We're going to throw out the warning in the back. He's already found the warning in the back. There's a fact issue as to whether or not that's adequate. Was the wording of the warning adequate? If it was viewable? You're not contesting that they should have used other language or said it differently? You're not contesting that the— I believe we raised it, but the fact of the matter is it's really the conspicuity of it more than it is the language. It's the fact that you can't see the warning. Well, now, Judge Costa, as a trial court judge, clearly disagreed with that, and he has a nice picture of the chair in his opinion, and the warning is pretty clear on that. Absolutely is. He has a very nice picture. And it says, do not, what is it, do not place on elevated surfaces? Prevent falls, never use on an elevated surface, which is in our brief. It's a very nice exemplar supplied by Bombo of a bright red warning on a canary yellow seat. That is not the color scheme that was used on the Blythe seat. There is no evidence in the record as to what a non-faded warning would look like. They come in different colors, right? Yeah. What color was the Blythe's? This is the Blythe seat. That is the seat? That is exhibit 300 from the trial, 300A. That is the Blythe seat, yes. There is no evidence in the record. They could have come forward with an exemplar of what that warning looked like on a seat with the Blythe's color scheme if they wanted to. I would still submit to you that it's up to a reasonable jury to decide whether or not that warning would be adequate. But the fact of the matter is there's no evidence in the record as to what a warning would have looked like on their seat with their color scheme. Well, it's in the record. It's not, though. Excuse me? There isn't evidence of this seat? We're looking at it. Oh, yeah, exactly right. And the warnings on this seat, these are pictures out of the summer judgment briefing. Right. What does all the warning ever look like as far as we, that's the only evidence in the record. There is no evidence. We don't know what it looked like because your client never read the warning. So your client isn't able to say, well, we got this seat and it was so faded I couldn't read it, da, da, da. She never looked at it. That's the problem. That's a pretty big hurdle. Well, and that's the problem. We don't know that every day she didn't get to being a good mother and keeping things clean for her baby. She didn't scrub it and scrub it and scrub it. I don't know. Which is exactly what makes it a question for a jury to decide, Your Honor, doesn't it? We don't know. No, I think what he's saying is Judge Costa found there was no evidence of causation. Because if your plaintiff, you can't show the defective warnings if they were defective, cause the accident if the plaintiff never read them. And that's the second part of my argument this morning is on the causation portion, Your Honor. And as the Texas Supreme Court said in the science case, there are, of course, two types of warning issues. There are content warning issues and then there are issues where you can't see the warning. If the warning is, if the inadequacy goes to the inability to see it, well, then the warning is no better than no warning at all. Were you saying that written warnings in the box were not sufficient? Absolutely not sufficient. And this Court didn't hold that they were sufficient. Among other things, the box, there are, it's on one panel of the box in small font. It's written in nine different languages. The language is set out by country flags. There's no United States flag on it. It's just the English language falls under the Great Britain flag. And most importantly of all, Bumbo admitted that they know these things and these boxes and the leaflets are thrown out as they were in this case. But since people don't pay any attention to warnings, maybe there shouldn't be a cause of action for defective warnings. I mean, you're just undermining the whole theory of this kind of product liability law. But there is a cause of action. You'd put a whole lot of people who design warnings out of business. There is a cause of action. And the fact of the matter is the issue is whether or not on this record the Blyce had submitted summary judgment evidence sufficient to raise a genuine issue of material fact. And I think under a pure application of the summary judgment standard, the evidence raised that genuine issue of material fact. What about addressing in the design defect, the issue that was tried to a jury, address risk utility? You don't present it in your opening brief, I don't believe. They raise it in their brief, and you don't even respond to it in your reply brief. So how about addressing risk utility in the minute you've got left? I mean, the risk utility is in all candor likely something that the jury was to understand. On this record, we think no jury could look at this seat and say, what's the utility of it? They're advertising that you ought to use it in place of a high chair. Would you put a high chair up there without a seat belt? What is the utility versus the risk? And that again goes to the evidence that the jury didn't hear on the 2012 recall. The Consumer Product Safety Commission apparently thought that the risk utility didn't weigh in favor of leaving the seat without the seat belt. All 4 million products that they sold in this country were finally recalled in 2012 so that a seat belt could be added to it. Well, didn't you have to prove to the jury that had there been a seat belt, it would have prevented the accident? I think we had to prove to the jury that it would have reduced the risk of the accident. How were you going to go about that, or how did you attempt to go about that as a matter of law? With the evidence related to the 2012 recall that showed that the number of injuries reduced down to, I believe, no reported injuries once they added a seat belt. I don't understand the physics of that. Please explain to me the physics of that because, I mean, I've seen babies do this. A seat belt doesn't prevent them from pushing back with their little toes, which is what they like to do. Well, what it does is it keeps their bottom on the seat and it changes the leverage in the seat. Without the seat belt holding them down, they . . . How did you prove that to the jury? Expert testimony. I mean, was that in the record? I believe that we put it on through the experts. Did you try this case? I did not try this case. That's a problem. Okay. Well, you have time for rebuttal. Thank you, Your Honor. Okay. Mr. Anand? May it please the Court. My name is Taresh Anand and I'm here on behalf of the appellees. I'd like to quickly begin with the design defect issue since that's where the Court left off. It's an issue I think is fully addressed in the brief, but just to clear up a few issues raised by Appellant's Counsel. Appellant's Counsel talked about the high chair marketing, the claim that Bumbo advertises the chair as a high chair, and that's not correct. What they're citing to is advertising by an independent third party, not Bumbo. So to claim that because Bumbo claims the chair is a high chair and therefore should have a seat belt is completely inaccurate. And they should know that because they depose a third party, and that's the deposition they're citing to. It's a deposition taken by the same lawyers involved in this case. The additional issue the Court asked about is Falls . . . What's that third party? It was a distributor called Wartburg Enterprises. The deposition was Mark Buchanan. And the website they were talking about was a website he had set up where . . . a company had set up where they directly sold products to customers. This is not a Bumbo website. The additional issue is Falls still occurring with belts, and that's an issue that actually came up quite a bit at trial. And even the design expert for the plaintiffs admitted that Falls still can and do occur with belts. He was not confident that adding a belt to the Bumbo seat would prevent all Falls. And he would not recommend that even with the belt, the seat could be used safely on race surfaces. So even with the belt, there was still the warning not to put it on a high surface? Correct. Even now with the belt on the product, the warnings have been made even bigger, saying don't use it on race surfaces, because we don't want people to think now with a belt it's okay to use on race surfaces. Falls still and do happen with belts. So the belt is merely to reduce the risk, but not to make it a safe product for use on race surfaces. The remaining issues on risk utility, we've cited numerous portions of the record where the jury could find that the utility of the product far outweighed the risk. I'm not going to waste the Court's time with that unless you'd like me to go through them point by point. I'll switch over to the manufacturing defect issue and the summary judgment on that claim. I'll begin with the box warnings, because this is a big issue in my mind. The plaintiff's claim or the Blight's claim that Bumbo knew that warnings were not being read before being thrown away. And that's not true at all. What they cite to in their brief is a portion of Donald Pillai's deposition, and that's at page 4938 in the record. Donald Pillai's deposition was taken in a prior case where Bumbo International Trust, one of the police here, was not even a party in the case. It was another company. And what he simply testified was in his opinion people would throw away the box and the leaflet rather than store them in their house. And he explained his answer with if you didn't do that, you'd have a house full of boxes. At no point did he testify or even suggest that people were not reading the warning before throwing it away. And another important distinction is that case involved the pre-2007 box and not the current box, which was further updated to make it more prominent. So that's an incorrect assertion of the record. The court also asked about did the child come out of the seat with the seat going down on the floor. And on page 402 of the record, what Mrs. Pillai testified is that the seat fell over with the child, and she had no idea what exactly happened leading up to that. All she knew was that the seat was on the floor with the child. So that's what the record states on that point. The court correctly found that there were no fact issues regarding the adequacy of the on-seat warning. There were two warnings on there, one on the back and then the new one on the front. And as counsel mentioned in the previous case, the court found that there were arguably fact issues regarding the prominence of the warning on the back, not the content, just the prominence. But those issues were resolved by putting the additional warning on the front of the seat. Let me ask you a question, though. The district court opinion has this graphic depiction. At the time of summary judgment, did the district court have a picture of the lavender-colored Bumbo seat? It did, Your Honor. The blights submitted only the photo of their seat with the faded warnings. They didn't offer another photo with pristine warnings on the seat. That is just a photo of a Bumbo seat I had sitting in my office, so we took a photo and submitted it with the motion. It provides the court with the placement of the warning. So if he took your photo and he had their photo, is that making some kind of fact determination implicitly about the conspicuousness of the warning? It's not, Your Honor. That photo provides the content, the placement, and the size of the warning relative to the seat. The blights could have objected at trial or at the summary judgment stage if they wanted to and if they felt that that wasn't a proper depiction of the warning, but they didn't do that. They could have offered another warning with a purple Bumbo seat, but they didn't do that. And even with this current seat, while the warning is smudged, the question is what condition were the warnings in when the product was sold, because that's when the adequacy of the warnings are judged. And so even with those smudged warnings, the court can still see these. As I understand it, because the mother and father never looked at the warnings, there was no evidence about what they looked like when they obtained them at the baby shower. It gets even better than that. They expressly agreed that they had no idea what condition the warnings were in, either at the time they got the seat or at the time of the incident. And I don't know if I have that record site handy, but it's one that we've clearly identified in our brief. And to add to that, we have the declaration of Bumbo CEO, who made it very clear, and it was not controverted, that the warnings on new Bumbo seats do not appear smudged or faded. They're pristine, similar to the ones in the yellow Bumbo seat that the defendants offered along with their motion. But getting past that, there's still the warnings on the box and the leaflet, and there's nothing in the law that requires multiple warnings. To the contrary, everything under Texas law very clearly states that a manufacturer must provide an adequate warning. So if this court finds that the warning on the box, any one warning on the box was adequate, that alone is enough to affirm the district court's decision. Here we have multiple warnings. They all talk about not using the product on raised surfaces and the ability of children to get out of the seat. The blight's contention is you can make them bigger, you can make them bolder, but you can say that about any warning. And then there would be no case where summary judgment would be proper on a warning defect case. You could literally go buy any product off the shelves today and argue, sure, if you made it a little bit bigger, maybe I would have seen it. And that's essentially akin to what we have here. There are massive warnings on this box, and we have a photo of Mrs. Blythe holding up the seat, and even in that photo taken from a distance, you can see the big yellow triangle on the top of the seat. That warning alone, Mrs. Blythe agreed, would have convinced her that a child could come out of the seat and that the product should not be used on raised surfaces. There was really no fact issue as to the adequacy of those warnings or the warning. What is the record size for that where she admitted if she had read it, she wouldn't have put the child on the table? That, Your Honor. It goes over multiple pages. It's 500 to 516, and that covers each of the warnings individually. There was no issue about the adequacy of the warnings on the box. There was no argument about conspicuousness. The Blythe's expert made a very passing reference to the warning, not unambiguously conveying that the seat should not be used on raised surfaces, but he then made it very clear that his focus was the on-seat warning, and he offered no explanation for that statement. And then with regard to the leaflet, he offered no analysis whatsoever. Do you think it's correct to exclude expert testimony about the warnings? Whether it's correct or not, I do think it was well within the district court's discretion to do so. And in this case, I do agree, obviously, given that it went to my favor. The district court has wide discretion, as this Court has previously stated, in deciding whether or not expert opinions are admissible at the summary judgment stage. And unless that decision is manifestly erroneous, it won't be disturbed on appeal. Here the Court found that we're talking about a simple children's product with warnings that are directed to average consumers. You don't need someone with a Ph.D. or expert scientific testimony to explain whether those warnings adequately and sufficiently convey what the risks are in using the product. We've cited multiple other cases where district courts have excluded opinions of warning experts. In fact, this very warning expert on that point, because he's talking about issues that are well within the knowledge of average people. The Blights come back and cite some other cases where courts have allowed or have required expert testimony on that point. But that's kind of the nature of discretion. Some judges will use that discretion to let it in, and others will keep the expert testimony out. The Blights' other point concerns the Court's causation finding. And I don't think they fully discussed that, but that was the district court's alternate basis for granting partial summary judgment. And that concept derives from the General Motors v. Sines case, where the Court held that despite a warning's inadequacies, if following them would have prevented the accident,  here we had Mrs. Blight concede that once she read those warnings, she knew exactly what they meant, she would have followed them, and may not have even bought the seat. And so without using the product of— She didn't buy the seat. It was given to her. Sure. She wouldn't have used the seat. Correct. I think she registered for it. I don't remember that for sure, but I believe that's in the record. But certainly she wouldn't have used the seat, and that is her testimony. And so without using the seat on a raised surface, and perhaps not using it at all, there would not have been an accident. Wait a minute. You're saying she registered for a Bumbo seat? I should have a slide for that. I don't recall that for sure. We'll check that, because that could be important. Thank you. Certainly, Your Honor. Now the Blights made— Not in your brief, I don't believe. I don't believe so. I'd be happy to submit a Rule 28. No, I just— The Blights made two arguments in their brief here regarding the causation point. One, they claimed that Mrs. Blight did not, quote, ignore the warning, and second, they claimed that even if she had followed the warning, the injury might still have occurred. The only argument we heard here today on that point was a completely different issue, and one not raised in their appellate brief. Here they argued that the science court distinguished between prominence-based issues with warnings and content-based issues with warnings, and that was not an issue raised in their appellate brief, at least with regard to this causation issue. So having failed to address that point, they waived that argument. But even on the prominence issue, there was no contest regarding the prominence of the box and leaflet warnings. The only issue there was the claim that they threw it away without reading them. That doesn't alter the prominence of those warnings. And because those warnings came with the product, there was no dispute about that, and the Blights agreed that reading them would have prevented this incident, or at least they would have followed those warnings, unless the court correctly held that the causal link was destroyed. The additional argument they make on appeal is even if— Oh, I've got to say, reading those briefs, I've never seen so many charges and countercharges of waivers of issues. There were quite a few, Your Honor. We just want to make sure we preserve them and brought them to the court's attention where they came up. Y'all have made it into a new art form. All right. The Blights' other two arguments that they actually made on appeal were that Mrs. Blight did not ignore the warnings, and their definition of ignore is seeing a warning and choosing not to read it. That's what they say has to happen in order for the signs we're holding to apply. That doesn't make any sense. It's not what happened in signs. In fact, the court in signs repeatedly explained that no one at that company where the decedents worked paid any attention to the warnings. Other courts that have followed the signs ruling have similarly held that in cases where people don't pay attention to the warnings, that triggers a signs rule because if you follow the warnings that you didn't pay attention to, it would have prevented your injury anyway. Therefore, the inadequacies in the warnings could not have caused the accident. The other argument the Blights make is even if the warning had been followed, there was still a possibility of an injury still occurring on the floor,  but there was nothing in the record that was admissible for that purpose. The only things they point to are hearsay statements from third parties where customers have claimed that there were some reports of injuries on the floor. When you say injuries on the floor, you mean a child in a bumbo on the floor falling over. Correct, Your Honor. And as both experts agreed at trial, when the child is in a bumbo seat on the floor, the child is at the same level or height as he or she would be when sitting or crawling on the floor. The bumbo seat isn't elevating you. So a fall from a bumbo seat is no different from a child simply toppling over when sitting on the floor unaided by a bumbo seat. Well, looking at that trial exhibit, it looks like the child is about six inches above the floor level. It's not, Your Honor, and I'll be happy to hand it to you if you'd like, but it's the bottom of the seat that counts, and that's just about an inch from the floor. It even depresses further once the child is on it. See, the seat is indented in it. It is. All right. I believe the testimony at trial from both experts was there's about an inch or so that the seat actually elevates the child off the floor, so virtually the same height as being on the floor itself. So the argument is even if the seat may have been used on the floor and Mrs. Blythe followed the warnings, there's still a possibility of an injury happening. And in that case, then, we're not really talking about a warning claim anymore because no matter what the warning was, there was still a possibility of an injury happening. That is a design defect claim, and that went to the jury, and the jury found there was no design defect in the Gillespie case. Did they make that claim at trial? I'm sorry. Did the plaintiffs make the claim at trial presented to the jury that the product is defective because even if it had been on the floor, the child could have been injured? They did. I don't know if that was one of their big arguments, but their overall argument was the seat did not adequately contain children within the seat. They did present evidence of incidents on the floor or reports of incidents on the floor, so that certainly did go to the jury. I've got about five minutes left, and the recall issue really didn't come up, but it might be an important issue, so unless there are questions on the warning defect claim, I'd like to jump over to the recall issue, if I may. Before we get to the Blight's substantive arguments as far as why the court abuses discretion keeping out evidence about the recall, there is a waiver issue to look at here as well. The basis here is when a party fails to challenge all the grounds on which a court excludes evidence, they waive all objections to the exclusion of that evidence. Here the district court excluded evidence about the recall on three grounds, Rule 407 and also Rules 402 and 403, relevance and undue prejudice. Yet on appeal, the Blights only challenged the decision on Rule 407 grounds. They offered no argument whatsoever that the court was incorrect under Rule 402 or 403 in keeping out that evidence. To try and overcome this issue, well, to make that point clear, the defendants filed a motion in limine before trial, and in doing so, that motion was based on Rules 407, 402, and 403. The court very expressly stated on the record that it was granting that motion for the reasons, plural, identified by the defendants. To try and overcome that issue, the Blights claim that limine rulings aren't appealable, and this is something they claim in their reply brief, and that's not an accurate statement of the law. When a court denies a motion in limine, certainly that doesn't preserve error, but when a motion in limine is granted, that's the basis for keeping the evidence out of trial. The case they cite simply stands for the proposition that a party must make an offer of proof during trial and give the trial court a chance to reconsider its decision in the context of what has happened at trial. But there are numerous cases from this circuit. Well, the rule was changed, wasn't it? That used to be the rule, and then the rule was – I'm sorry. That used to be the legal effect. If you moved in limine, you had to bring it up again at trial. And then the Federal Rule of Civil Procedure was changed to exactly address that and said you make it in limine, you don't have to raise it again at trial. I may have missed that distinction, and if so, that's even better for us. But certainly it doesn't affect the fact that even if it is raised in an offer of proof and the court stands by its decision, that decision, the original decision, is what kept the evidence out of trial. Here the blights did make an offer of proof, and the court stuck by its decision to keep the evidence out. The basis was clearly enunciated on the record as being the reasons identified by the defendants, which were 402 and 403 in addition to 407. And the blights have failed to challenge all those grounds, so any arguments on that basis are waived. Does the fact that the recall was voluntary or involuntary under Rule 407, does that make a difference? Rule 407 doesn't expressly contain any requirement that a measure be voluntary, but there is case law requiring that a measure be voluntary in order for Rule 407 to apply. There's one appellate court that sort of touched this issue by saying even if Rule 407 requires measures to be voluntary and then analyzed whether or not the measure was voluntary. But I don't think the court has to address that question here because there's no evidence in the record about this being an involuntary measure. There's only two types of recalls, voluntary and mandatory recalls. And a voluntary recall is one where the company chooses to make it happen. A mandatory recall is one where they're forced to make it happen. A mandatory recall requires CPSC to essentially go sue the company in court to get a forced recall, and none of that happened. The only reason we have a recall here is because Bumbo agreed to make it happen. Bumbo chose to say no to the CPSC, and the next step would not have been an automatic recall. It would have been CPSC having to decide whether or not to pursue a forced recall. And the fact that Bumbo had a choice in this matter, I think, confirms the voluntary nature of the recall. Parties settle civil cases not because they want to pay money to the other side, but because they fear if they go forward there might be potentially worse consequences through a trial. Those are still voluntary, and the fact that the CPSC was pushing Bumbo to do a recall doesn't take away from the voluntary nature of Bumbo having a choice in the matter. The other two issues the Blight cite are the impeachment and the feasibility exceptions, and I have about a minute left, so I'll touch on those very briefly. Impeachment exception doesn't really apply because courts are very clear that the impeachment is a narrow exception and it must be applied carefully to avoid the exception from swallowing the rule. Virtually anything about a recall or a remedial measure can be said to in some way impeach testimony that the company was exercising due care or had a reasonably safe product early on. And if you allow that alone to constitute impeachment, you essentially don't have Rule 4 or 7 anymore. That becomes the rule. And therefore other courts have explained that the evidence must directly impeach the testimony and a great nexus is required between the evidence and the testimony. Here simply stating that the seat was safe without a belt doesn't cause recall evidence to come in, and that's the Blight's argument. They want to point to a recall FAQ webpage, a frequently asked questions webpage, which says there was a question, is my baby safe if I continue to use my Bumbo baby seat without a restraint belt? And the answer was do not use your Bumbo baby seat until the restraint belt and new warning sticker have been added. That merely confirms that this is a recall website. Bumbo is urging consumers to use the remedy, and it doesn't directly impeach the testimony. That's equally consistent with merely stating that the seat is safe but still use the measure because we've added it. I believe I'm out of time, so unless there are any other questions, thank you very much. Okay. And we ask that you affirm the district court's decision. Okay, Master Sanfilippo. The evidence that Bumbo knows that consumers throw out the box of leaflets without reading them is contained in the record not only just from Mr. Pillai but from another Bumbo corporate rep deposition testimony. It's 4211 to 13 and 4987 to 90, among other places, but that's where I could find it on the fly. What's your best case for the proposition that written warnings in the box are inadequate? The best case is Scion's Hess v. Bumbo, Fisher v. Bumbo, O'Neill v. Bumbo. If the manufacturer knows that those warnings aren't reaching the consumer, there's a genuine issue of material fact as to whether they're adequate to bring the risk of using that product to the consumer's attention. What the district court said about the other Bumbo case, or at least one of them, was that the other opinion didn't say they were inadequate because people didn't read them. And it said they were inadequate because they were ambiguous. Well, but he also referenced the fact that they didn't read them. And when you rolled into this opinion, what he said in his order in this case is what changes this scenario here is the warning added in 2007, that front warning. That's all he focused on in this order. At a minimum, implied from that is the fact that the evidence raised a genuine issue of material fact as to the box and leaflet because there was evidence that they know that consumers aren't reading those things. Well, he certainly didn't reference any of that in the prior, from the other Bumbo opinions. But he didn't rely on the box or the leaflets either in this opinion. All he relied upon was the post-2007 warranty and, in particular, the fact that the CPSC approved of the language that was used on that warning. Well, that ought to help, shouldn't it? Well, what ought to help is the fact that then he disregarded the fact that in 2012 they said, warning still isn't working, we're recalling this thing. So while he relied upon the CPSC when it was favorable to Bumbo, when it became favorable to the Blyce, he didn't even reference the fact that. Well, favorable is one thing, but the rules of evidence are quite another. But there was no objection to any evidence put in in the summary judgment motion. And as this Court has held in BGH LLC v. City of Universal City, Texas, if you don't object on hearsay grounds to summary judgment evidence, it's evidence in the record. As you said, Your Honor, the allegations of waiver have flown all over the place, but the fact of the matter is they didn't object to any of the summary judgment evidence. And, frankly, they didn't even object to relying upon the expert's report in this case. They didn't move to exclude the expert. And, in fact, if you read, there have been two post-Blythe opinions involving summary judgments of marketing defect claims on this product. Both the District of Arizona and the Southern District of Florida, the District of Arizona case is Hess v. Bumbo, Southern District is Fisher v. Bumbo. Both allowed expert testimony. Both found that there was a genuine issue of material fact on warning. And, in fact, in at least one of those cases, Bumbo had warning experts, and the Court noted there's competing evidence from the two experts on whether the warnings are adequate. In your conclusion, both in your opening and your reply brief, you ask us to render— I have a question. I want to read this to you. Render judgment in favor of the Blythes on their design defect claim, remand the case for a new trial on damages caused by the design defect and liability and damages on all their other claims. What would the damages be on all their other claims? Manufacturing defect claim. The damages are intertwined with the design defect. And you would just get one amount of damages. You would just get one amount of damages, Your Honor. That's correct. With regard to the causation issue and the fact that the Blythes didn't read the warning, again, they rely on signs, and we rely on signs, frankly, because science says when the defect goes, a warning which is not displayed with sufficient prominence to give reasonable notice to the person to whom it is directed is hardly better than no warning at all. That was a written warning in a box, was it not? No, the science case was a warning on a plate on a truck. It was a car seat. No, that's the Gillespie case. Oh, that's the Gillespie case. Yeah, signs was the all-purpose truck that they put a water tank on. Okay. So, quickly, with respect to whether or not, because the presumption is unquestionably in certain cases we claim only if it's a content warning issue, but it's disregarded under certain circumstances. Those circumstances... Go ahead. You can finish your... Key points, Stewart, Foltz, Gillespie, all three of those cases, it was beyond question and undisputed that if they would have followed the warnings given, that the incident wouldn't have happened. That's not the case here. There was evidence showing that even after the recall with the new warnings and even when the seat was being used on the floor, children were falling out of them and hurting themselves. So, with that, Your Honor, we respectfully request the judge to do his work. Thank you. Thank you.